IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONJERE C. FAUST : | |
| : | |
| Plaintiff : | CIVIL ACTION |
| : | |
| vs. : | |
| : | NO. 08-cv-4602 |
| KURT STORM, JOSE MATOS, JODI : | |
| KLINGER, AND RCN CORP., a/k/a : | |
| RCN CABLE CO., a/k/a RCN : | |
| TELECOM SERVICES, INC. : | |
| : | |
| Defendants : | |

## **MEMORANDUM OPINION**

Before the Court are Defendants RCN Corp. and Jodi Klinger's Motions to Dismiss (Doc. Nos. 11, 12). For the following reasons, Defendant RCN's Motion is denied, and Defedant Jodi Klinger's Motion is denied in part and granted in part. Specifically, counts one and two are dismissed as to Defendant Jodi Klinger only in so far as those counts allege violations of Title VII. All other counts remain.

## **Background**

In February 2007, Defendant RCN Corp.[1] ("RCN") hired Plaintiff Jonjere C. Faust ("Faust") to work in its regional office in Bethlehem, Lehigh County. (Id. ¶ 6.) She was the only female employee in that office. (Id. ¶ 7.) Defendants Kurt Strorm ("Storm") and Jose Matos ("Matos") were managers or supervisors of RCN's regional office in Bethlehem and had "direct supervisory responsibility over" Faust. (Id. ¶¶ 2-3). Defendant Jodi Klinger ("Klinger") was also

---

[1] "RCN is a provider of cable, high-speed internet[,] and phone services to residential, small business[,] and commercial customers throughout the Eastern part of the United States, including the Lehigh Valley of Pennsylvania." (RCN's Br. 1-2.)

an employee of RCN.  (Id. ¶ 4.)  Though not described as a manager or supervisor, (Id. ¶ 4), Faust alleges that Klinger had a supervisory position within RCN.[2]  (Id. ¶ 11.)

Faust alleges that she was discriminated against because of her sex "in the terms and conditions of her employment."  (Id. ¶¶ 7, 16.)  She was allegedly "given less desirable sales assignments, in terms of their profitability and location."  (Id. ¶ 7.)  She was also allegedly subjected to (1) comments "about her lack of sales and how she should be getting more sales from male clientele due to her physical appearance as an attractive female" and (2) "statements having a double-meaning, one of which had obvious sexual overtones."  (Id. ¶¶ 7-10, 16.)  Further, according to Faust, the harassment and "abuse culminated in an incident, taking place on or about March 12, 2007."  (Id. ¶ 11.)  On that day, "Defendants [Storm, Matos, and Klinger] taking advantage of their supervisory positions, asked [Faust] to report to an individual office.  Upon her entrance, the door was shut and physically guarded by [Storm].  Defendants confronted [Faust] and placed duct tape over [her] mouth, telling her that they were doing it so that she would not be able to speak and would have to listen to them."  (Id.)  Faust alleges that all three individually-named Defendants acted in conspiracy with each other.  (Id. ¶¶ 2-4).

Faust stopped reporting for work after the incident.  She alleges that she was constructively discharged "as a result of the gender discrimination and objectively unreasonable and sexually hostile work environment, and [RCN's] failure in this regard."  (Id. ¶ 13.)  Faust alleges that she made at least three phone calls to RCN's Human Resources department during her employment to complain about her treatment.  (Id. ¶ 12.)  However, she did not speak to

---

[2] Klinger disputes Faust's characterization of his position as a supervisory position. (Klinger Br. 2.)  However, as this is a Motion to Dismiss, the Court must accept all allegations accept Faust's allegations as true.

anyone until a week after she stopped reporting for work when someone from RCN called her to find out why she stopped reporting for work. (Id. ¶¶ 12, 14.) Faust also alleges that she physically visited RCN's Human Resources employee's office multiple times but found no one there. (Id. ¶ 12.) According to Faust, RCN's written policies on sexual harassment were insufficient and not enforced. (Id. ¶¶ 12, 39, 43.)

Faust is suing RCN, Klinger, Matos, and Storm for violations of Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"). She is also suing all four Defendants for assault, battery, false imprisonment, and the intentional infliction of emotional distress. Klinger is moving that the Court dismiss the entire Complaint as to him. RCN is moving that the Court dismiss counts two through six as to it.

## Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

<u>Analysis</u>

A.   **Count One - Sexual Harassment in Violation of Title VII and the PHRA as to Klinger**

Count one alleges violations of both Title VII and the PHRA as to all Defendants. (Compl. ¶ 67.) Klinger moves that the Court dismiss count one against him because (1) there is no individual liability under Title VII and (2) there is no individual liability under the PHRA for non-supervisory employees. (Klinger Br. 3-5.) As to the Title VII claim, Faust concedes that Klinger cannot be held liable. (Pl.'s Br. re Klinger 7.) Indeed, there is ample caselaw supporting the proposition that "Congress did not intend to hold individual employees liable under Title VII." <u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, 100 F.3d 1061, 1078 (3d Cir. 1996); <u>McGovern v. Jack D's Inc.</u>, No. 03-5447, 2004 WL 228667, at *4 (E.D. Pa. Feb. 3, 2004) (citing <u>Sheridan</u> for the same proposition). Thus, the Court will dismiss the individual liability claim under Title VII at count one as to Klinger.

As to the PHRA claim, Klinger can be held liable because, unlike Title VII, the PHRA prohibits "*any person . . . or employee*, [from] aid[ding], abet[ting], incit[ing], compel[ling] or coerc[ing] the doing of any act declared by this section to be an unlawful discriminatory practice." 43 P.S. § 955(e) (emphasis added); <u>compare</u> <u>id.</u> <u>with</u> 42 U.S.C. § 2000e-2(a)-(c) (setting forth unlawful employment practices for employers, employment agencies, and labor organizations and making no reference to employees). However, courts within this Circuit, as well as within the Commonwealth, have distinguished between supervisors and non-supervisory employees for the purpose of imposing liability under Section 955(e) of the PHRA. Specifically, liability is imposed only on the former. <u>See</u>, <u>e.g.</u>, <u>Dici v. Pennsylvania</u>, 91 F.3d 542, 553 (3d Cir.

1996) (affirming grant of summary judgment as to plaintiff's colleague because plaintiff's colleague, i.e. not her supervisor, was not a proper defendant under PHRA); Clinkscales v. Children's Hosp. of Phila., No. 06-3919, 2007 WL 3355604, at *4-5, 8 (E.D. Pa. Nov. 9, 2007) (retaining Section 955(e) claims against human resources officials, i.e. employees with some supervisory responsibilities, who were alleged to have aided and abetted the racial discrimination of a supervisor by failing to stop him); and Kaniuka v. Good Shepherd Home, et al., No. 05-2917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006) ("Direct incidents of employment discrimination by non-supervisory employees are not covered by PHRA section 955(e). Supervisory employees, however, may be held liable under section 955(e) because they share the discriminatory purpose and intent of the employer necessary to sustain a claim of aiding and abetting.") (internal citations omitted).

Here, Faust alleges that Klinger acted in a conspiracy with Matos and Storm, (Compl. ¶ 4), and that the three men took "advantage of their supervisory positions" when they ordered Faust into an office, confronted her, and placed duct tape over her mouth (Id. ¶ 11). That incident, according to Faust, was the culmination of the sexual discrimination and abuse that she suffered while employed by RCN. (Id.) These facts are sufficient to plead a violation of Section 955(e) of the PHRA as to Klinger because he is characterized as a supervisory employee who aided and abetted conduct that could constitute a violation of the PHRA.[3] Thus, the Court will not dismiss the individual liability claim under Section 955(e) of the PHRA at count one as to

---

[3] Again, as noted above, Klinger challenges the characterization of his position as supervisory position in his brief to the Court. (Klinger Br. 2.) However, as this is a Motion to Dismiss, the Court must accept Faust's allegations as true. Klinger is free to renew this argument at the close of discovery as a motion for summary judgment.

Klinger.

**B.     Count Two - Constructive Discharge in Violation of Title VII and the PHRA**

  **i.     As to RCN**

Count two alleges violations of Title VII and the PHRA under a constructive discharge theory as to all Defendants.[4] RCN moves that the Court dismiss count two as to it. Vital to a constructive discharge analysis is that the employer "knowingly permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." Clayton v. Pa. Dept. of Welfare, No. 07-3171, 2008 WL 5396290, at *3 (3d Cir. Dec. 22, 2008). RCN argues that dismissal is proper because Faust cannot show that RCN "had notice of any alleged sexual harassment or discrimination."[5] (RCN Br. I 4.) RCN notes that Faust did not complain to anyone in the company about the alleged discrimination and waited until one week after she stopped reporting for work to tell anyone from RCN about the discrimination.

RCN's argument is unpersuasive. RCN fails to acknowledge Faust's factual allegations that she "made multiple phone calls, approximately one per week for three weeks, to [RCN's] Human Resources employee during her first month of employment but was never given a return phone call," (Compl. ¶ 12), and that she "physically visited [RCN's] Human Resources

---

[4] Claims of constructive discharge under Title VII and the PHRA are analyzed under the same standard. See Smith v. ABF Freight Systems Inc., No. 04-2231, 2007 WL 3231969, at *6, 10 (citing Glenn v. Horgan Bros., Inc., No. 03-6578, 2005 WL 1503428, at *2 (E.D. Pa. 2005)).

[5] RCN does not argue that Faust was not subjected to conditions that were "so unpleasant or difficult that a reasonable person would have felt compelled to resign." Thus, the Court will not address such an argument and assume that Faust's allegations that she was subjected to such conditions are true for the purposes of this analysis. Further, such an argument would be inappropriate at this stage of the litigation because such an inquiry is fact-sensitive and would require discovery. See Hill v. Borough of Kutztown, 455 F.3d 225, 233 n.7 (3d Cir. 2006).

employee's office multiple times but found her out of the office each time." (Id.)  Further, Faust alleges that "Defendant, RCN Cable Co., knew or reasonably should have known of the sexual harassment of [Faust] by supervisors and other employees." (Id. ¶ 37.)  These allegations establish, for the purposes of this analysis only, that RCN had knowledge or notice, or both, of the alleged harassment.  See Levendos v. Stern Entertainment Co., 909 F.2d 747, 753 (3d Cir. 1990) (inferring employer notice where the plaintiff made ten attempts over a period of months to contact the president of the defendant/employer to discuss complaints of discrimination). Additionally, courts in this Circuit have not treated employer notice as an essential requirement of a constructive discharge claim but rather as a relevant consideration based on the size and structure of an employer/defendant.  Compare id. at 751-53, with Allen v. Mineral Fiber Specialists, Inc., No. 02-7213, 2004 WL 231293, at *8-10 (E.D. Pa. Jan. 30, 2004) (granting summary judgment on behalf of defendant/employer on constructive discharge claim where plaintiff/employee rejected defendant/employer's offer to discuss allegations of discrimination, never filed a formal complaint, and only discussed his concerns with someone who lacked authority to correct the situation).  Thus, the Court will not dismiss count two as to RCN.

      **ii.**      **As to Klinger**

Klinger moves that the Court dismiss count two as to him based on the same theory he asserted in response to count one, namely that individual employees cannot be held liable under Title VII or the PHRA.  Having analyzed and rejected Klinger's theory above, the Court will omit an analysis here because it applies to count two as well.  As already stated, see Part A, while Klinger cannot be held liable under Title VII, he can be held liable under the Section 955(e) of the PHRA because he is alleged to have a supervisory role within RCN and aided and abetted

conduct that may have violated the PHRA. Accordingly, count two is dismissed as to Klinger only in so far as it is based on a violation of Title VII. Count two is not dismissed as to Klinger in so far as it alleges a violation of the PHRA.

**C.     Counts Three, Four, and Five - Assault, Battery, and False Imprisonment**

   **i.     As to RCN**

RCN moves that the Court dismiss counts three, four, and five, namely assault, battery, and false imprisonment, as to it because either (1) Storm, Matos, and Klinger were acting within the scope of their employment, and therefore, the claims are barred as to RCN by the Pennsylvania Workers' Compensation Act[6] ("PWCA") or (2) that Storm, Matos, and Klinger were acting outside of the scope of their employment and, therefore, RCN cannot be liable under the theory of respondeat superior.[7]

---

[6] The PWCA provides:
> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.
>
> (b) In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 Pa.C.S.A. § 481.

[7] Because RCN does not challenge the adequacy of the pleadings regarding the assault, battery, and false imprisonment, the Court will assume, for the purposes of this analysis only,

### a. PWCA and the "Personal Animus" Exception

The Court cannot conclude, as a matter of law, that the assault, battery, and false imprisonment claims are barred by the PWCA. Even if the Court assumes that the individually-named Defendants were acting within the scope of their employment, it is too early in the litigation to decide that, as a matter of law, the PWCA preempts the intentional torts as to RCN. While "Pennsylvania courts have made clear that the [PWCA] "provides the exclusive remedy for all employees' work-related injuries," McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 400 (E.D. Pa. 2002), there is an exception that permits plaintiff/employees to recover from defendant/employers for "injuries caused by the intentional conduct of third parties [including co-workers] for reasons personal to the tortfeasor and not directed against [the plaintiff] as an employee or because of his employment." Jackson v. Lehigh Valley Physicians Group, No. 08-3043, 2009 WL 229756, at *6 (E.D. Pa. Jan. 30, 2009) (internal citations and quotations omitted). "To fit within the [personal animus] exception, the third party or fellow employee's act must have been motivated by his animosity against the injured employee. If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the [personal animus] exception." Id. at *8 (quotations and citations omitted). Central to resolving a question about the applicability of the personal animus exception is an inquiry into the state of mind of the tortfeasor, here Storm, Matos, and Klinger[8]

---

that those torts occurred.

[8] There is a split of authority for the proposition that sexual or racial harassment claims in the workplace are preempted by PWCA. See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 160-61 (3d Cir. 1999). Outside of the racial or sexual harassment context, however, "Pennsylvania courts appear most likely to find that workplace conduct falls within the personal animus exception when the conduct involves physical violence, harm, or threats thereof." See Jackson,

Such an inquiry is inappropriate for the Court to make at this stage in the litigation. See Mullholland v. Gonzalez, No. 08-3901, 2008 WL 5273588, at *3 (E.D. Pa. Dec. 18, 2008) (declining to resolve an issue relating to the defendant's state of mind for the purposes of permitting punitive damages on a motion to dismiss). Thus, the Court will not dismiss counts three through five as to RCN on the basis of the PWCA and, instead, will allow discovery to proceed on these claims.

    b.  **Respondeat Superior**

Due to the early stage of the litigation, the Court is left without sufficient facts to find, as a matter of law, that the individually-named Defendants were acting outside the scope of their employment. Faust alleges that the individually-named Defendants were agents, servants, and employees of RCN at the time question. (Compl. ¶¶ 2-5.) She further alleges that the March 12, 2007 incident is alleged to have occurred on RCN's property. (Id. ¶¶ 6, 11.) However, the Court has no information regarding the nature of the individually-named Defendants' work and lacks a detailed account of the March 12, 2007 incident, including statements made to Faust and the time of day. Such information is crucial to a determination of the course and scope of employment. See Restatement (Second) of Agency § 228 (enumerating four inquires to make in determining whether the conduct of a servant is within the scope of employment, including whether the conduct is "the kind he [or she] is employed to perform," whether "it occurs substantially within the authorized time and space limits," and whether "it is actuated, at least in part, by a purpose to serve the master"). Thus, counts three, four, and five cannot be dismissed as to RCN on the

---

2009 WL 229756, at *7; Price v. Philadelphia, 790 F. Supp. 97, 100 (E.D. Pa. 1992). Thus, it stands to reason that allegations of physical conduct, as alleged here, with a backdrop of sexual harassment in the workplace could satisfy the personal animus exception to the PWCA.

theory that the individually-named Defendants were acting outside the scope of their employment.

### ii. As to Klinger

Klinger moves that the Court dismiss counts three, four, and five as to him. Klinger's sole argument is based on the exclusivity provision on the PWCA. He argues that the PWCA bars the claims as to him, an employee. However, a plain reading of the PWCA reveals no support for his contention. See 77 Pa.C.S.A. § 481 ("The liability *of an employer* under this act shall be exclusive . . . .") (emphasis added). Further, there is no caselaw that supports his contention. See, e.g., McClain v. McDonald's Corp., No. 05-1117, 2007 WL 210440, at *11 (E.D. Pa. Jan. 25, 2007) ("I conclude that the PWCA does not preempt the false imprisonment and battery claims against [co-employees]."); Churchray v. Park Place Enterprises, Inc., No. 06-531, 2006 WL 1865001, at *3 (E.D. Pa. 2006) ("The PWCA expressly contemplates liability for a co-employee whose intentional tortious conduct results in the injury of a fellow employee."). Thus, counts three, four, and five are not dismissed as to Klinger.

### D.   Count Six - Intentional Infliction of Emotional Distress

Both RCN and Klinger move that the Court dismiss count six on two theories: (1) failure to state a claim and (2) the exclusivity provision of the PWCA.

### i. Failure to state a claim

In order to recover for the intentional infliction of emotional distress, a plaintiff must show conduct so extreme and outrageous that it intentionally or recklessly caused him or her severe emotional distress. See Bock v. CVS, No. 07-412, 2008 WL 3834266, at *2 (E.D. Pa. Aug. 14, 2008) (citations and quotations omitted). Further, courts have permitted intentional

infliction of emotional distress claims in the employment context to proceed to trial. See, e.g., Merritt v. Delaware River Port Auth., No. 98-3313, 1999 WL 285900, at *7-8 (E.D. Pa. Apr. 20, 1999) (denying motion for summary judgment as to defendant employer for the intentional infliction of emotional distress where co-worker subjected plaintiff to repeated incidents of degrading and wholly inappropriate behavior with a backdrop of sexual harassment). Here, Faust alleges that she was subjected to weeks of harassment based on her sex that culminated in a physical altercation on March 12, 2007, which involved assault, battery, and false imprisonment. The harassment and the March 12 incident caused Faust to suffer sever emotional distress. (Compl. ¶¶ 89-90.) As this is a Motion to Dismiss, which requires the Court to accept all factual averments as true and in the light most favorable to Faust, it cannot be said at this stage that Faust's allegations are insufficient to state a claim for the intentional infliction of emotional distress. Thus, count six will not be dismissed as to either Klinger or RCN.

### ii.  PWCA

The Court will omit any further analysis of Klinger and RCN's arguments under the PWCA because the Court responded to them in Part C. Specifically, as to RCN, it is too early in the litigation to determine (1) whether the individually-named Defendants were acting within the scope of their employment or (2) whether PWCA preempts the intentional torts, and if it does, whether the personal animus exception applies. See Part C.i. As to Klinger, as pointed out above, the PWCA does not shield employees from liability, only employers. See Part C.ii.

An appropriate Order shall be entered.